## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

CAMERON J. SUTTERFIELD                                                    PLAINTIFF

V.                                No. 4:21-CV-915-KGB-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                           DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.   Introduction

On May 16, 2019, Cameron J. Sutterfield ("Sutterfield") filed a Title II application for a period of disability and disability insurance benefits. (Tr. at 15). In the application, he alleged disability beginning on November 16, 2017. *Id*. In a written decision dated December 9, 2020, an administrative law judge (ALJ) denied the application. (Tr. at 23–24). The Appeals Council denied Sutterfield's request for

review on August 9, 2021. (Tr. at 1–3). The ALJ's decision now stands as the final decision of the Commissioner, and Sutterfield has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II.    The Commissioner's Decision

At step one of the required five-step analysis, the ALJ found that Sutterfield had not engaged in substantial gainful activity during the period from his alleged onset date of November 16, 2017 through his date last insured of December 31, 2018.[1]  (Tr. at 17). At Step Two, the ALJ determined that Sutterfield's only severe impairment was degenerative disk disease. (Tr. at 18).

After finding that Sutterfield's impairment did not meet or equal a listed impairment (Tr. at 18),[2] the ALJ determined that he had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with the following additional limitations: (1) he could no more than occasionally climb, balance, crawl,

---

[1]  The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

Sutterfield acquired sufficient quarters of coverage to remain insured through December 31, 2018. (Tr. at 15). Therefore, the relevant time-period for determination of eligibility for benefits runs from November 16, 2017, through December 31, 2018.

[2]  See 20 C.F.R. Part 404, Subpt. P, Appendix 1.

kneel, stoop, and crouch; and (2) he could no more than occasionally reach overhead with the bilateral upper extremities. (Tr. at 18).

At Step Four, the ALJ determined that Sutterfield was unable to perform any past relevant work. (Tr. at 22). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Sutterfield's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including positions such as document preparer and printed circuit board examiner. (Tr. at 23-24). Thus, the ALJ concluded that Sutterfield was not disabled. *Id*.

## III.   Discussion

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however,

merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.   Sutterfield's Arguments on Appeal

Sutterfield contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ erred by finding that PTSD was not a severe impairment at Step Two; (3) the ALJ failed to properly evaluate Sutterfield's subjective complaints; and (4) the RFC did not incorporate all of Sutterfield's limitations.

Sutterfield alleges he is disabled due to back, hip, and leg pain, as well as PTSD and anxiety. In November 2017, he was involved in a serious motor vehicle collision, with his infant daughter as passenger. (Tr. at 69). Imaging thereafter showed disk herniation and degenerative disc disease in his lumbar spine, and

4

Sutterfield's neurosurgeon said he should return yearly for checkups.[3] (Tr. at 49–50, 68–85, 490–499). Musculoskeletal exams were grossly normal, revealing some tenderness in his spine. *Id*. In 2019, Sutterfield's doctor recommended conservative treatment, such as pain medication, steroid injections, and physical therapy.[4] *Id*. In April 2019, Sutterfield said that he took Oxycodone sparingly, and that steroid injections were moderately effective. *Id*. Sutterfield satisfactorily completed his course of physical therapy. *Id*. While he claimed that his low back pain radiated to his right leg, he said that the radicular pain had improved as of April 2019.[5] *Id*.

Sutterfield told his doctor in July 2019 that he was running his own company and his doctor noted in January 2020 that he had a "good employment status."[6] *Id*. Moreover, Sutterfield admitted he could care for his young daughter, prepare simple meals, drive, so some grocery shopping, and walk up to a mile a day.[7] (Tr. at 68, 175–181). He also said he had no problems getting along with others. *Id*.

---

[3] There is very little medical evidence during the relevant time-period.

[4] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[5] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[6] Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling pain. *Naber v. Shalala*, 22 F.3d 186, 188–89 (8th Cir. 1994).

[7] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

With respect to allegations of problems stemming from anxiety and PTSD, it is important to note, once more, that the relevant time-period for determination of eligibility for benefits ended on December 31, 2018. Sutterfield did not seek mental health treatment until March 2019, and he only attended seven therapy sessions. (Tr. at 446, 509–510). He did not see a psychiatrist. Sutterfield's counselor, Heather McConnell, noted that he was highly motivated and doing well in therapy. *Id*. On July 24, 2019, Ms. McConnell wrote that she saw no cognitive function deficits in Sutterfield. *Id*. She said, however, that he had significant physical limitations. *Id*. This was not borne out in the medical record.

Sutterfield first alleges that the ALJ should have further developed the record, which dovetails with his argument that PTSD should have been ruled to be a severe impairment at Step Two.[8]

The Disability Determination Services[9] psychiatric reviewing experts found that that there was no need for further record development, with respect to PTSD, because Sutterfield's treatment for those conditions occurred after the end of the relevant time-period, and the evidence did not show any mental limitations. (Tr. at

---

[8] The ALJ discussed allegations of anxiety and PTSD, and stated that there was no acceptable medical evidence of those impairments before the end of the relevant-time period. (Tr. at 18). Thus, the ALJ found, they were not "medically determinable impairments." *Id*.

[9] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

69–71, 80–85). The experts cited generally normal mental status examinations, and Sutterfield often denied of symptoms of anxiety or depression. *Id*. They also noted that, in 2018 and 2019, Sutterfield denied suicidal ideations or any past psychiatric illness. *Id*. Again, while Sutterfield claims that the 2017 wreck caused PTSD, he did not seek treatment for PTSD until approximately a year and a half after the wreck. The ALJ correctly found that anxiety and PTSD were not medically determinable impairments (at Step Two), and that no further development of the record was necessary.

Next, Sutterfield contends that the ALJ did not properly evaluate his subjective complaints.[10]  Physical and mental examinations from the relevant time-period showed no more than mild conditions. Treatment was conservative, and it helped with symptoms. Sutterfield could perform some daily activities and there is evidence that he was working in spite of his alleged impairments. The ALJ's finding that Sutterfield's subjective complaints were not entirely consistent with the balance of the record was well-supported.

---

[10] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*.

Finally, Sutterfield argues that the RFC did not fully incorporate his limitations.[11] As discussed above, the medical evidence and Sutterfield's own statements about his daily activities show that he was not as limited as he alleges.

The DDS reviewing medical experts assessed Sutterfield's physical limitations and found that he could perform light work with some postural limitations. (Tr. at 68–72, 80–85). The ALJ incorporated the persuasive sections of the DDS findings, but he assigned an even more restrictive RFC (for sedentary exertional work).[12] (Tr. at 21–22). This suggested that he credited some of Sutterfield's complaints, even though the medical evidence did not show serious physical limitations. The assigned RFC was appropriate based on the record evidence.

### III.   Conclusion

There is substantial evidence to support the Commissioner's decision that Sutterfield was not disabled. The record was fully developed, the ALJ did not err at

---

[11] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[12] The ALJ's discussion of the DDS opinions was a bit muddled (Tr. at 21–22), but the record supports his ultimate finding.

Step Two, and he did not err in his evaluation of subjective complaints. Finally, the RFC properly incorporated all of Sutterfield's credible limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 28th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE